## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ABDULLAH ("ABE") FATTAEY,  )
          )
      **Plaintiff,**  )
v.            )
          )
KANSAS STATE UNIVERSITY,  )
KIRK SCHULZ,      ) **Case No. 2:15-cv-09314-JAR-KGG**
CINDY BONTRAGER,    )
APRIL MASON,      )
RYAN SWANSON,     )
ROBERTA MALDONADO FRANZEN, )
          )
      **Defendants.** )

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Nature of the Matter Before the Court*

If anything, this is a time-barred state-law contract claim against Kansas State University which this Court has no jurisdiction to consider. On September 23, 2013, Kansas State University ("KSU") gave Abe Fattaey 12-months notice that it was giving him a Terminal Contract and that his "last day of employment with Kansas State University will be September 26, 2014."[1] Fattaey signed the document on September 24, 2013, by his signature indicating his acceptance of the appointment and that he was bound by its terms.[2]

After having accepted the Terminal Contract and the $100,000-plus salary, Fattaey brought this eight-count action in federal court, naming KSU and five individual KSU officials, seeking to convert his state-law contract claim into a federal civil rights claim alleging that KSU breached a contract with him, and that the individual KSU officials engaged in a race-based and/or religion-based and/or national origin-based and/or age-based conspiracy against him in violation of 42 U.S.C. § 1985(3) and, through the non-renewal of his annual employment

---

[1] Exhibit D (Doc. 3-5) to Plaintiff's First Amended Complaint (Doc. 3).
[2] *Id.*

contract, allegedly violated procedural and substantive due process rights under 42 U.S.C. § 1983.  In addition to the state law breach of contract claim against KSU, Plaintiff asserts state-law based claims against the individual defendants, claiming that they engaged in a civil conspiracy against him and tortiously interfered with his employment "contract." For the reasons stated herein, Plaintiff's Complaint fails to state a claim for which relief may be granted on several grounds, and should be dismissed as per Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**STATEMENT OF FACTS**

For purposes of this Motion, the relevant facts alleged in Fattaey's First Amended Complaint[3] may be briefly summarized. Beginning in 1971, Plaintiff Abdullah ("Abe") Fattaey was employed at Kansas State University ("KSU") in a variety of positions.[4]  K.S.A. 76-715 provides that "the chief executive officer of each state educational institution shall appoint such employees as are authorized by the board of regents.  Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents." For unclassified non-tenure track personnel, the Board's policies provide that "all appointments . . .shall be annual."[5]  Fattaey, who was unclassified, was last employed in the position of Director and University Architect.[6]  This position was subject to appointment on an annual basis.[7]  Each "Regular Appointment" stated that it was an offer of a specified position for a 12-month term, further stating: "[t]his appointment is subject to annual review, renewal, and notice of non-reappointment in accordance with the regulations and policies of the Board of Regents and the University.  It does not lead to

---

[3] First Am. Complt. filed Nov. 10, 2015 (Doc. 3)
[4] Doc. 3, at ¶ 15.
[5] Kansas Board of Regents Policy Manual, at C.2.(b)(vi), at p.47, ¶attached hereto and incorporated herein as per Fed. R. Civ. P. 10(c). The Manual, available at www.kansasregents.org/resources/PDF/BoardPolicyManual.pdf, is subject to judicial notice as per Fed. R. Evid. 201. *O'Toole v. Northrop Grunman Corp.*, 499 F.3d 1218, 1224-25 (10th Cir.2007).
[6] First Am. Complt. (Doc. 3), at ¶ 15.
[7] *See Id.,* at ¶ 37; Plaintiff's Exhibit B.

consideration for tenure. This appointment is subject to reassignment of duties upon notice by the appointing administrator."[8]

In 2013, KSU formed a selection committee and sought applications for the position of Associate Vice President for Campus Planning and Facilities Management, including soliciting candidates from outside of KSU.[9]   As of April 3, 2013, Plaintiff had not applied for the position[10] and in fact, never submitted a formal application for the position.[11]   Ryan Swanson, an applicant from Nebraska, was selected for the position.[12]

On September 23, 2013, Cindy Bontrager, Interim Vice President of KSU, met with Fattaey and gave him a letter dated September 23, 2013 indicating that the letter and an attached Terminal Contract were notification to him that his employment at KSU would end on September 26, 2014.[13]  More specifically, Ms. Bontrager's September 23, 2013, letter stated: "[t]his letter serves as your official twelve months' notice of non-reappointment pursuant to section C170.3 of the Kansas State University Handbook, available at www.ksu.edu/policies. Your last day of employment with Kansas State University will be September 26, 2014."[14]  The Terminal Contract provided he would be paid at 100 percent time an annual salary at the rate of $100,854 through September 26, 2014.[15]  Plaintiff signed the Terminal Contract on September 24, 2013, under language stating: "I accept the appointment and agree to be bound by the terms stated herein."[16]  Fattaey's Complaint does not allege that he did not receive the $100,854 in promised salary pursuant to the Terminal Contract, nor does he complain that the amount of

---

[8] Exhibit B (Doc. 3-3) to Plaintiff's First Am. Complt. (Doc. 3).
[9] First Am. Complt., (Doc. 3), at ¶ 33.
[10] Exhibit A to Plaintiff's First Am. Complt. (Doc. 3-2), ¶ 1.
[11] First Am. Complt. (Doc. 3),  at ¶ 36.
[12] Id., at ¶ 41.
[13] Id., at ¶ 47; Exhibit E to Plaintiff's First Amended Complaint.
[14] Exhibit E to Plaintiff's First Am. Complaint. A copy of the Handbook section referred to in the letter is included in Exhibit C to Plaintiff's First Am. Complaint
[15] Exhibit E to Plaintiff's First Amended Complaint.
[16] Exhibit D (Doc. 3-5) to Plaintiff's First Am. Complt.

notice he received of non-renewal was defective.[17]   The Complaint does not allege that Fattaey

filed an appeal of the notice of non-reappointment as provided in the University Handbook,

Section C170.3(3) or that he filed an action in state court for judicial review of the non-renewal

decision.[18]

 The Complaint alleges that at the September 23, 2013 meeting with Bontrager, he

brought up the subject of his age, asking her if he could at least work until he turned 65 years of

age; according to the Complaint, Bontrager indicated she would consider the request and get

back to him.[19]   According to Fattaey, during the September 23, 2013, meeting, Bontrager

indicated the Terminal Contract was "not a discipline issue, it is time for a change."[20]

 On October 1, 2013, Plaintiff submitted a claim of age and race discrimination to KSU's

Office of Affirmative Action [now titled Office of Institutional Equity] based on his notice of

non-renewal.[21]   Plaintiff alleges that on October 7, 2013, he raised concerns with Roberta

Maldonado Franzen of the Office of Affirmative Action about her office handling his complaint

given that he was complaining about KSU President Kirk Schulz and Interim Vice President

Bontrager.[22]   On October 8, 2013, Ms. Franzen informed Plaintiff that since his complaints were

against President Schulz and Interim Vice President Bontrager he should contact the Kansas

Human Rights Commission,[23] which he eventually did.[24]

 On October 13, 2015, Fattaey filed his initial Complaint with this Court,[25] naming as

defendants KSU and five University officials claiming that his non-reappointment was a breach

---

[17] Doc. 3.

[18] Doc. 3.

[19] Doc. 3, at ¶ 54.

[20] *Id.*, at ¶ 53.

[21] *Id.*, at ¶ 55.

[22] *Id.*, at ¶ 61.

[23] *Id.*, at ¶ 62.

[24] Plaintiff recites that a Title VII claim will be the subject of an amendment. (Doc. 3), at 1, n.1.

[25] Complaint filed October 13, 2015 (Doc. 2).

of contract by Kansas State University, a state law claim. Fattaey also brings state law claims against President Schulz, KSU Provost April Mason, Vice President Cindy Bontrager and the newly-hired Associate Vice President Ryan Swanson for conspiracy and tortious interference with contract.  On the federal claims, Fattaey claims that  Schulz, Mason, Bontrager and Swanson engaged in a conspiracy actionable under 42 U.S.C. § 1985(3) because of the non-renewal; and that his non-renewal violated substantive and procedural due process, essentially arguing that he was guaranteed lifetime employment at KSU.  Although Fattaey's  First Amended Complaint includes general references to 42 U.S.C. § 1988 (Doc. 3, at ¶ 8, and Fourth and Fifth Causes of Action), that statute  "does not create independent causes of action, it simply defines procedures under which remedies may be brought in civil rights actions."[26]

Among other things, Plaintiff seeks compensatory and punitive damages, an order from this Court "reinstating Plaintiff to the position he held before his termination (or another comparable and suitable position at KSU)," as well as "lost future wages and benefits" and attorneys' fees and costs. On November 10, 2015, Plaintiff amended the complaint to add exhibits, keeping the same claims and defendants as the original.[27] In a footnote, Plaintiff states he will be seeking to amend to add "Title VII race, age and retaliation claims against KSU."[28]

### QUESTIONS PRESENTED

1.  Are Plaintiff's claims against Kansas State University for breach of contract and any official capacity claims against KSU officials barred by Eleventh Amendment and State sovereign immunity and the fact that KSU and state officials sued in their official capacities are not "persons" subject to Section 1983?

---

[26] *O'Connor v. St. John's College,* 290 Fed. Appx. 137, n.1 (10th Cir. 2008) (quoting *Hidahl v. Gilpin County Dept. Of Social Serv.,* 939 F.3d 1150, 1152 (10th Cir. 1991)).

[27] Doc. 3.

[28] Doc. 3, at 1, n.1.

2.  Assuming, *arguendo*, the claim is not barred by the Eleventh Amendment and State sovereign immunity, and assuming pendent jurisdiction, does Plaintiff's state law breach of contract claim against KSU state a claim for which relief may be granted by the Court?

3.  Are Plaintiff's Section 1983 and 1985(3) claims barred by the two-year statute of limitations?

4.  Assuming, *arguendo,* the claim is not time-barred, do the conclusory allegations in Plaintiff's Complaint state a claim for which relief may be granted under 42 U.S.C. § 1983?

a. Do the allegations in the Complaint show conduct that "shocks the conscience of the federal judiciary," as necessary to a substantive due process claim?

b.  Does the Complaint state a claim for violation of procedural due process when he has no property right under state law in a contract renewal?

c. Does the Complaint state a plausible claim under *Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012)?

5.  Are Plaintiff's civil rights claims against the individual defendants barred by qualified immunity where their conduct did not violate clearly established law of which they would have known?

6.  Do the conclusory allegations in the Complaint state a claim for conspiracy under 42 U.S.C. § 1985(3) or under state law, or are the claims otherwise barred?

7.  Presuming pendent jurisdiction, should the state law claim that President Schulz, KSU Provost and Senior Vice President Mason, Interim Vice President Bontrager, and Associate Vice President for Planning and Facilities Management for KSU Ryan Swanson tortiously interfered with Fattaey's "contract" be dismissed for failure to state a claim, given the bar of the statute of limitations and Plaintiff's failure to plead a claim for relief under this state law tort?

# ARGUMENT AND AUTHORITIES

### *Standard on 12(b)(1) Claims*

As this Court has stated it,

> "[f]ederal courts are courts of limited jurisdiction, and as such, must have a statutory or Constitutional basis to exercise jurisdiction.  A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper, here, Plaintiff bears the burden of showing why the case should not be dismissed.  Mere conclusory allegations of jurisdiction are not enough. . . When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[29]

### Eleventh Amendment Immunity Bars Any Claim Against KSU, an Agency of the State of Kansas and Official Capacity Claims against State Officials

The Complaint names as defendants Kansas State University ("KSU"), a State of Kansas entity,[30] and KSU Officials KSU President Kirk Schulz, Interim Vice President Cindy Bontrager, KSU Provost and Senior Vice President April Mason, Interim Director of the KSU Office of Affirmative Action Roberta Maldonado Franzen, and Associate Vice President for Planning and Facilities Management for KSU.[31] Plaintiff's civil rights claims against KSU and against KSU officials in their official capacity (if any),[32] are barred by Eleventh Amendment immunity and must be dismissed as per Fed. R. Civ. P. 12(b)(1).[33]  Similarly, KSU and its officials named in their official capacities are not "persons" subject to liability under 42 U.S.C. § 1983.[34]

---

[29] *Lee v. Kansas State Univ.*, No. 12-2638-JAR-DJW, 2013 WL 2476702, * 1 (D. Kan. June 7, 2013) (citations omitted).

[30] Plaintiff's First Am. Complt. (Doc. 3), at ¶ 2.

[31] Doc. 3, at ¶¶ 3-7.

[32] At paragraphs 3-7, the Complaint refers to each of the KSU officials by their respective titles and positions and states "at all times pertinent hereto, [the official by title] had a direct and substantive role in making decisions with respect to Plaintiff's employment at KSU and Plaintiff's complaint of age and race discrimination," acknowledging that official capacity claims are being attempted.

[33] *See, e.g., Franklin v. Kansas State Dept. of Corrections*, 160 Fed. Appx. 730, 734 (10th Cir. 2005), *cert. denied*, 549 U.S. 1219 (2007); *Barger v. State of Kansas*, 620 F. Supp. 1432, 1434 (D. Kan. 1985).

[34] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989).

Under the clear rule stated by the Supreme Court in *Pennhurst State School & Hospital v. Halderman*,[35] this Court lacks jurisdiction over the state law-based claims because of the State's Eleventh Amendment immunity. That federal-law-based-claims may have been brought in an action also does not end the inquiry as jurisdiction must be determined on a claim-by-claim basis.[36] As the Supreme Court stated it, "neither pendent jurisdiction not any other basis of jurisdiction may override the Eleventh Amendment."[37]

By its terms, the Eleventh Amendment applies to bar federal court suits against a State by foreign citizens. U.S. Const. Am. XI ("[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."). Because of the Eleventh Amendment, states cannot be sued in federal court without their consent or unless Congress has abrogated their immunity.[38]  Kansas has not waived its Eleventh Amendment immunity to suits under 42 U.S.C. §1983; nor has Congress abrogated that immunity.[39]  State universities in Kansas function as alter egos of the State and share its Eleventh Amendment immunity.[40]  An official capacity suit "is, in all respects other than name, to be treated as a suit against the official's entity," subject to the same limitations.[41] Considerations of a plaintiff's convenience cannot overcome Eleventh Amendment immunity.[42] Plaintiff's breach

---

[35] 465 U.S. 89, 121 (1984).
[36] *Pennhurst,* 465 U.S. at 121 ("[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.").
[37] *Id.*
[38] *Green v. Mansour,* 474 U.S. 64, 68 (1985) (citing *Pennhurst,* 465 U.S. at 98-99).
[39] *Ellis v. University of Kan. Medical Center,* 163 F.3d 1186, 1195-96 (10th Cir. 1998).
[40] *Brennan v. University of Kan.*, 451 F.2d 1287, 1290-91 (10th Cir. 1971); *Ndefru v. Kansas State Univ.*, 814 F. Supp. 54 (D. Kan. 1993); *Billings v. Wichita State Univ.*, 557 F. Supp. 1348, 1350 (D. Kan. 1983).
[41]  *ANR Pipeline Co. v. LaFaver,* 150 F.3d 1178, 1188 (10th Cir. 1998) (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) (internal quotation marks omitted)).
[42] *Pennhurst,* at 121-23.

of contract claim asks for a monetary judgment against the State Treasury – retroactive monetary relief – barred by the Eleventh Amendment.[43]

The State of Kansas (KSU) is the real party in interest on Plaintiff's state law claims, which all arise out of the same facts. For example, the breach of contract claim (labeled "IV") alleges that Fattaey had a contract with KSU.[44] Breach of contract claims against States filed in federal court are barred by Eleventh Amendment immunity,[45] which also extends to State Officials.[46] These claims must be pursued, if at all, in state court.[47]

Neither does the limited exception to immunity provided by *Ex parte Young*[48] apply here. That doctrine only applies to continuing violations of *federal* law; it does not allow federal jurisdiction over a suit that seeks to redress past wrongs, which, according to this Complaint, occurred in 2013.[49] *Ex parte Young* is not available where, as here, Plaintiff seeks a declaration that state officials failed to comply with state law.[50] KSU and Plaintiff's First Cause of Action must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

***Standard for 12(b)(6) Motions to Dismiss***

This Court has stated the standard for motions to dismiss as follows:

> To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true that "raise a right to relief about the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." "The complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plausibility

---

[43] *See* Pltf's First Am. Complt. (Doc. 3), at 20, Prayer for Relief.

[44] Complt. (Doc. 1), at ¶¶ 144-46, 151.

[45] *Pennhurst*, at 106; *see, e.g., Clark v. New Mexico Dept. of Corrections*, 58 Fed. Appx. 789, 791, 2003 WL 133458 (10th Cir. 2003) ("The Eleventh Amendment provides absolute immunity in federal court to state officials for suits alleging breach of contract under state law," citing *Pennhurst*, affirming district court's dismissal of this claim, including against individual state officials since the State was the real party in interest.).

[46] *Clark*, 58 Fed. Appx. at 791; *Pennhurst*, 465 U.S. at 106 ("it is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

[47] *Jones v. Courtney*, No. 11-3272, 466 Fed. Appx. 696, 698-701, 2012 WL 505837 (10th Cir. 2012) (citations omitted )

[48] 209 U.S. 123 (1908).

[49] *ANR Pipeline,* 150 F.3d at 1191; *Pennhurst,* 465 U.S. at 102-03; *Green v. Mansour,* 474 U.S. 64, 68 (1985).

[50] *Pennhurst*, 465 U.S. at 106

standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."  "Mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim. Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.

The Supreme Court has explained the analysis as a two-step process.  For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, ][but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are entitled to an assumption of truth.  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[51]

In particular, conspiracy claims are subject to a heightened burden of pleading.[52]

"Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations,' but rather, 'must be pled with some degree of specificity.'"[53]

**Plaintiff's Breach of Contract Claim Against KSU Fails to State a Claim**

In addition to the clear bar of Eleventh Amendment and sovereign immunity, and without waiving and subject to that argument, Plaintiff's breach of contract claim against KSU also fails to state a claim for which relief may be granted.[54] As a matter of Kansas law, such claims are to be brought, if at all, in accordance with the Kansas Judicial Review Act ("KJRA"), which includes a 30-day limitation period, K.S.A. 77-613(b), (d).  *Douglass v. Kansas State Univ.*[55] is on point.

In *Douglass*, a KSU professor brought a breach of contract action against KSU, challenging the University's decision to deny him tenure. Similar to Fattaey, Douglass had been

---

[51] *Lee v. Shanklin*, No. 12-CV-2638-JAR, 2014 WL 4167442, * 2 (D. Kan. Aug. 20, 2014) (citations omitted).
[52] *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).
[53] *O'Connor v. St. John's College*, 290 Fed. Appx. 137, 141 (10th Cir. 2008).
[54] Because a federal claim is lacking here, under *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725-27 (1966), the state law claims should be dismissed. However, if the Court exercises jurisdiction, the state law claims are argued herein where otherwise appropriate for the Court's convenience.
[55] 22 Kan. App. 2d 171, 915 P.2d 782 (1996).

employed pursuant to a series of one-year contracts, in his case running from May 27, 1984 through June 16, 1991.[56]  In 1989, Douglass applied for tenure.[57]  On February 20, 1990, Douglass was notified that his tenure application had been denied and that his terminal date of employment would be June 16, 1991.[58]  On June 16, 1994, Douglass filed suit against KSU, alleging breach of contract and asking for a declaratory judgment and a mandatory injunction compelling KSU to appoint him as a tenured professor.[59]  KSU defended, citing the 30-day limitations period in the KJRA which was Douglass' exclusive remedy.[60]  The state district court dismissed the action, finding that the professor's exclusive remedy was under the KJRA, K.S.A. 77-601, *et seq*., and that the time for seeking such review had long expired.[61]  The Kansas Court of Appeals affirmed, finding that the KJRA was the professor's exclusive remedy.[62]

Similarly, in *Gaskill v. Fort Hays State University*,[63]  the Kansas Court of Appeals affirmed the district court's dismissal of a professor's breach of contract action against the University when it did not renew his contract, holding that the court lacked jurisdiction given Gaskill's failure to comply with the KJRA, stating "[t]he KJRA was Gaskill's only remedy for his breach of contract claim." The same result occurred in *Schall v. Wichita State Univ.* where the Kansas Supreme Court held that *Schall's* claim that WSU breached a contract when it terminated his employment as a clinical supervisor/coordinator was barred by his failure to seek review of WSU's decision in accordance with the KJRA, stating this was his exclusive remedy.[64]

---

[56] *Id.*, at 172.
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*, at 173; *see* K.S.A. 77-613(b), (d).
[61] *Id.,* at 172.
[62] *Id.,* at 174.
[63] 31 Kan. App. 2d 544, 70 P.3d 693 (2003)
[64] 269 Kan. 456, 481-83, 7 P.3d 1144(2000) (citing numerous cases).

Similar to Douglass, Gaskill, Schall and many others, Fattaey's untimely breach of contract claim is barred as a matter of well-established Kansas law as per the above precedents.[65]

Further, Plaintiff has no claim on the merits.  He makes no claim that his Terminal Contract was not honored by KSU or that he did not receive the $100,000-plus in compensation promised. Exhibit D shows that Fattaey signed the Terminal Contract on September 24, 2013, indicating by his signature, "I accept the appointment and agree to be bound by the terms stated herein." Those terms included that it was a "Terminal Contract," and that it ended on 9/26/2014.

Fattaey's breach of contract claim is based upon the erroneous premise that KSU impliedly promised him lifetime employment, a species of implied contract claim. But Plaintiff's claims are contradicted by the language of the appointment documents themselves (Exhibit C), by statute, K.S.A. 76-715, which provides that unclassified employees serve at the pleasure of the chief executive officer subject to policies approved by the Board of Regents, and by Board policies which provide for annual appointments, not lifetime appointments, as a matter of law.[66]

Further, as a matter of Kansas law, there are no implied contract claims against the State of Kansas or a state entity. In accordance with the Kansas Constitution, Article 2, § 24, K.S.A. 46-903 provides: "[n]o money or funds shall be disbursed from the state treasury or any special fund of the state of Kansas in part or full satisfaction or payment of any claim or judgment based in whole or in part on an implied contract, unless the payment of such claim or judgment has been specifically authorized by act of the legislature."  This statute has been interpreted by Kansas courts to prohibit implied contract claims, particularly in the absence of satisfaction of conditions set forth by the Legislature, none of which has been alleged by Fattaey here.[67]

---

[65] *See, e.g., Douglass,* 22 Kan. App. 2d at 174; *Schall v Wichita State Univ.,* 269 Kan. 456, 482, 7 P.3d 1144 (2000) (applying *Douglass* to a similar breach of contract claim by another university employee).
[66] Exhibit A hereto.
[67] *See, e.g., Wheat v. Finney,* 230 Kan. 217, 220-22, 630 P.2d 1160 (1981).

**Plaintiff's §§ 1983 and 1985(3) Claims Against the Individual Defendants Are Barred by the Two-year Statute of Limitations**

Dealing with the federal law claims first, Plaintiff's Fourth and Fifth Causes of Action ("VII" and "VIII"), are barred by the statute of limitations and must be dismissed.  Courts have held that the two-year statute of limitations for personal injury claims in Kansas applies to civil rights claims brought under 42 U.S.C. § 1983.[68] Section 1983 claims accrue, for the purpose of the statute of limitations "when the plaintiff know[s] or should have known about them."[69] Similarly, Plaintiff's Section 1985(3) conspiracy claim is subject to a two-year statute of limitations period under the same analysis as applied to Section 1983 claims.[70]

Here, Fattaey pleads that he met with Interim Vice President Bontrager on September 23, 2013 and that at that meeting, "Defendant Bontrager also gave Plaintiff a letter dated September 23, 2013, indicating the letter and an attached 'Terminal Contract' was notification to him that this employment at KSU would end on September 26, 2014."[71]  Thus, Fattaey knew about the non-renewal of his appointment, the Terminal Contract, on September 23, 2013.[72]  The paperwork was dated September 23, 2013, and he signed it accepting its terms on September 24, 2013.[73]  Fattaey knew at the September 23, 2013, meeting that this was 'a done deal.'[74]  Yet, he

---

[68] *See, e.g., Johnson v. Johnson Co. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991); *see also, Lyons v. Kyner*, 367 Fed. Appx. 878, 882 (10th Cir. 2010) (applying K.S.A. 60-513(a)(4)); *Acosta-Felton v. Greinke*, No. 11-3103-RDR, 2013 WL 615469, * 1 (D. Kan. Feb. 19, 2013) (dismissing 1983 and 1985(3) conspiracy claims as time-barred by the two-year Kansas statute of limitations).
[69] *Dockery v. Unified School Dist. No. 231*, 382 F. Supp. 2d 1234, 1243-44 (D. Kan. 2005) (citing *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)).
[70] *Lyons v. Kyner*, 367 Fed. Appx. 878, 881 (10th Cir. 2010) ("For conspiracy claims under §1985(3), courts have also applied the forum state's personal-injury statute of limitations....Thus, we apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").
[71] Doc. 3, at ¶¶ 46-47.
[72] Doc. 3, at ¶ 47.
[73] *Id.; see also*, Exhibit D to Plaintiff's First Amended Complaint.
[74] Doc. 3, at ¶ 48 ("Defendant Bontrager gave no indication to Plaintiff that he could contest her September 23, 2013, notification of termination, or that she would provide him a hearing or otherwise explain to him why his KSU employment was ending.").

did not file this lawsuit until October 13, 2015, more than two years after he received notice of non-renewal.[75]  Plaintiff's federal civil rights claims are time-barred.

Fattaey's Section 1983 claim alleging denial of procedural and substantive due process is based on the non-renewal. Similarly, the Section 1985 conspiracy claim repeatedly refers to the purpose of the alleged conspiracy being "terminating Plaintiff's employment,"[76] which was known on September 23, 2013. Any alleged conspiracy to non-renew Fattaey would have taken place prior to September 23, 2013, as would the decision to hire Swanson into the position to which Fattaey 'expected to ascend,' even earlier in 2013. The claims should be dismissed.

**Plaintiff's Section 1983 Claim is Insufficient**

In addition to the bar of the statute of limitations, Plaintiff's breach of contract claim does not rise to the level of a Section 1983 constitutional claim. The Supreme Court has been clear that a constitutional claim does not arise when a plaintiff alleges a deprivation of an interest that "can be fully protected by an ordinary breach-of-contract suit."[77] This District reached the same conclusion long ago in *Bock Associates v. Chronister*, finding that "it is well settled that 'a simple breach of contract does not rise to the level of a constitutional deprivation.'"[78] Here, Fattaey's Section 1983 claim against Schulz, Mason, Bontrager, Swanson and [Maldonado] Franzen is based upon his interpretation of his "contract with KSU, KSU's policies, and KSU's

---

[75] Doc. 1.
[76] Doc. 3, at ¶ 119; *see also,*  ¶¶ 120 ("terminating Plaintiff"), 121 ("terminating Plaintiff's employment"); 122 ("reasons for termination).
[77] *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 195-96 (2001)
[78] 951 F. Supp. 969 (D. Kan. 1996) (citing numerous decisions including *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442 (8th Cir. 1995); *Boucvalt v. Board of Comm'rs*, 798 F.2d 722, 729-30 (5th Cir. 1986) (post-deprivation contract remedy is all process due to anesthesiologist whose contract with a public hospital was terminated).

practice."[79]  It is not a constitutional claim or a matter for the federal courts.  As this Court

recognized more than a decade ago, not every non-reappointment is a subject for § 1983.[80]

Plaintiff's allegations are also insufficient to show that each of the KSU Officials named

as a defendant personally participated in any civil rights violation as required.[81]  Because there is

no *respondeat superior* liability under Section 1983, Fattaey must plead that each government

official-defendant, through his or her own purposeful misconduct, violated the Constitution.[82]

The Complaint must allege facts showing personal participation by each of the defendants;

"plaintiff must establish 'a deliberate intentional act by the supervisor to violate constitutional

rights.'"[83] Following the Supreme Court's decision in *Ashcroft v. Iqbal*, these requirements have

increased to include a showing that: "(1) the defendant promulgated, created, implemented or

possessed responsibility for the continued operation of a policy that (2) caused the complained of

constitutional harm, and (3) acted with the state of mind required to establish the constitutional

deprivation."[84]  *Iqbal's* standard requires a plaintiff to plausibly plead that an individual

supervisor defendant violated the Constitution by his own conduct and his own state of mind.[85]

This Complaint is deficient under those standards. Although Fattaey at least met and

talked to Vice-President Bontrager regarding the non-renewal and she signed the letter (and the

Complaint contains insufficient facts to support any claim against her and certainly not a

conspiracy claim),[86] the Complaint contains no facts showing how that Schulz, Mason, Swanson

or Maldonado Franzen were the decision makers on the non-renewal or that they had anything to

---

[79] *See, e.g.,* Doc. 3, at ¶¶ 125-128.
[80] *Lane v. Simon*, No. 04-4079-JAR, 2005 WL 1366521, *5 (D. Kan. June 2, 2005), *vacated as moot,* 495 F.3d 1182 (10th Cir. 2007).
[81] *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).
[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1221 (2011); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).
[83] *Jenkins v. Wood*, 81 F.3d 988, 994-96 (10th Cir. 1996).
[84] *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).
[85] *Id.*, at 1197-99.
[86] Doc. 3, at ¶¶ 47-48.

do with it. If the theory is supervisory, as it appears to be, there are still no facts alleged as to

Schulz or Mason. The Complaint consists of bare, conclusory allegations, which are not

sufficient to state a claim under Section 1983.

Fattaey's Complaint fails to allege unlawful action on anyone's part and certainly nothing

that would rise to the level protected by Section 1983. Fattaey's claims consist of: (1) the

allegation that President Schulz, Mason and Bontrager formed a selection committee and sought

applicants to include those from outside KSU (the position for which Fattaey never applied), and

treated Fattaey as a new applicant and required him to submit an application (¶¶ 33-34); (2) they

"made no effort to celebrate or congratulate Plaintiff on his many years and accomplishments at

KSU, no announcement was made," or tell people at KSU why he was leaving (¶¶ 73, 89); (3)

that they never formed a relationship with him (¶ 84); and (4) that they did not follow the policy

on changes to employment contracts (by its terms is inapplicable here as the terms and title did

not change, just a change from Regular to Terminal as stated) (¶ 52).  Fattaey also complains

generally about how his internal KSU discrimination complaint was handled,[87] without showing

that Schulz, Mason, Bontrager and/or Swanson had any responsibility for logging or

acknowledging his complaint, which in any event was referred to KHRC after Fattaey himself

raised concerns about how his complaint would be processed.[88]  Further, since such matters are

considered confidential under KSU policy,[89] it would not have been appropriate for University

officials to have generally spread the word about Fattaey's internal complaint, if that is what is

being suggested in paragraph 67. The law is clear that ignoring correspondence outlining a

---

[87] Doc. 3, at ¶¶ 65, 67.
[88] Doc. 3, at ¶ 61.
[89] Exhibit F to Plaintiff's First Am. Complt. (Doc. 3-7), at 2.

complaint and/or failing to investigate a complaint does not sufficiently implicate a defendant for purposes of 1983 liability.[90]

Plaintiff's Complaint also fails to plead a plausible claim that in non-renewing his contract that any defendant intentionally violated his equal protection rights.[91] Plaintiff does not identify any other person who was similarly situated to him and was renewed.[92] Other than one stray comment about his accent in paragraph 42, which is denied, Plaintiff's Complaint contains nothing but speculation, and certainly does not plead a plausible equal protection claim under *Twombly/Iqbal* or *Khalik.* Fattaey's allegations are similar to Khalik's and also insufficient.[93] Similarly, Plaintiff's oblique references to a job he applied for but did not get are insufficient to meet the requirements in *Khalik* that a Plaintiff pleading discrimination or retaliation set forth a plausible claim as the Complaint consists solely of conclusory allegations.[94] Merely stating that one is an Iranian Muslim is insufficient to meet the *Khalik* pleading standard of setting forth a plausible claim that but for a violation of equal protection and his national origin/race, Fattaey would have been hired for the new position. This Fattaey has failed to do.

**The Complaint Fails to Allege a Sufficient Substantive Due Process Claim.**

Substantive due process claims are subject to dismissal as they are reserved for "only the most egregious official conduct."[95] As Circuit Judge David Ebel stated in affirming a judgment in defendants' favor on a substantive due process claim based upon the murder of a state employee in a state facility, this claim requires a plaintiff to demonstrate that the State acted in a

---

[90] *See, e.g., Palacek v. Zavaras,* No. 09-CV-01351-ZLW, 2010 WL 3307489, * 5 (D. Colo. July 1, 2010); *Davis v. Arkansas Valley Corr. Facility,* 99 Fed. Appx. 838, 843, 2004 WL 1119941 (10th Cir. 2004); *Fogle v. Pierson*, No. 05-CV-01-211-PSF, 2007 WL 274558, * 9 (D. Colo, Jan. 29, 2007).

[91] Title VII preempts a race discrimination claim under 1983. *Polson v. Davis,* 895 F.2d 705, 710 (10th Cir. 1990).

[92] *Khalik v. United Air Lines,* 671 F.3d 1188, 1194, and n.4 (10th Cir. 2012) (citing *Mahon v. Am. Airlines, Inc.*, 71 Fed. Appx. 32, 35 (10th Cir. 2003)).

[93] *Id.*, at 1193-94.

[94] *Compare Khalik, with* Doc. 3, at ¶¶ 77-81.

[95] *Heublein v. Wefald*, 784 F. Supp. 2d 1186, 1195 (D. Kan. 2011) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 771 (10th Cir. 2008)).

manner that "'shock[s] the conscience.'"[96] "The Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions.'"[97] The alleged due process violation also "must be more than an ordinary tort to be actionable under § 1983."[98]

Judge Melgren's dismissal of a similar substantive due process claim by a KSU professor is instructive, holding this claim requires that the Plaintiff allege that "the asserted right or interest, carefully described, is so 'deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."[99] "If the asserted right or interest does not meet the aforementioned standard, the Court then asks whether the government action that caused the deprivation is rationally related to a legitimate governmental interest."[100] The plaintiff must allege the government action in question is "arbitrary and unrestrained by the established principles of private right and distributive justice;" "only the most egregious official conduct can be said to be arbitrary in a constitutional sense."[101]

In *Lee v. Kansas State Univ.*,[102] this Court applied the same principles in dismissing a substantive due process claim brought by a student against Kansas State University, stating the high standard and finding that it was not met:

> "Government action violates substantive due process when it either deprives an individual of a fundamental right or interest or shocks the judicial conscience." In this case, Plaintiff argues the second approach, that Defendants acted in a manner shocking to the judicial conscience. To state such a claim, a plaintiff must allege government action that is "arbitrary and unrestrained by the established principles of private right and distributive justice." "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused

---

[96] *Uhlrig v. Harder*, 64 F.3d 567, 572-73 (10th Cir.1995) (citations omitted).
[97] *Id.*, at 573 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115,129 (1992)).
[98] *d.* (citing *Collins*, 503 U.S. at 128).
[99] *Heublein*, at 1195 (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008))
[100] *Id.* (citing *Seegmiller*, at 771).
[101] *Id.* (quoting *Seegmiller*, at 767).
[102] No. 12-CV-2638-JAR-JDW, 2013 WL 2476702, **8-9 (D. Kan. June 7, 2013).

injury to the plaintiff by abusing or misusing government power." "Plaintiffs must show a 'high level of outrageousness' and a magnitude of potential or actual harm which is truly conscience shocking."

Here, Plaintiff alleges in the complaint that her dismissal was arbitrary and capricious and sufficient to shock the conscience of a reasonable person. She elaborates in her response, arguing that Neill's actions in having himself removed from the advisory committee should shock the conscience of this Court and that her dismissal as a whole shocks the conscience. . . . But more broadly, these alleged transgressions do not rise to a level of outrageousness that shocks the conscience. A substantive due process violation requires more than an ordinary tort, and the Court is aware of its obligation not to convert ordinary state torts into constitutional claims. Because these allegations do not exhibit the high level of outrageousness necessary to shock the conscience of federal judges, Defendants' motion to dismiss the second claim is granted.

Similarly to the professor in *Heublein* and to Lee's allegations against the University in connection with her dismissal, Fattaey's Complaint fails to allege facts qualifying under the fundamental rights test. Courts have held that matters akin to contract disputes do not qualify as substantive due process claims.[103] Fattey's allegations are very vague, general and conclusory merely stating that he believes he was non-renewed because of his "race, ancestry, and ethnicity of being an Iranian Muslim," or possibly because of his age or retaliation.[104]  His allegations that amount to – 'I wasn't renewed. I'm Iranian Muslim. Therefore, the non-renewal must be because I am Iranian Muslim.' The conclusory allegations in the Complaint fail to overcome the "highly deferential rational basis standard," under which he has the "burden to negative every conceivable basis which might support the government action in question."[105]

For example, Plaintiff adds Maldonado Franzen as a defendant on this claim, for reasons that are unclear.  Even according to the Complaint, Ms. Maldonando Franzen received his complaint of discrimination at KSU's Affirmative Action Office on October 1, and when he

---

[103] *See, e.g., Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 229-30 (1985) (J. Powell, concurring); *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990); *Bock Assoc. v. Chronister*, 951 F. Supp. 969, 976 (D. Kan. 1996)
[104] Doc. 3, at ¶¶ 131, 132, 133, 134.
[105] *Id.*, at 1196.

raised a concern about KSU handling it on October 7, she referred him to the Kansas Human Rights Commission.[106]  Especially given Fattaey's own stated concerns, it was rational of her to refer him to an outside entity for investigation of his discrimination complaint.  She did nothing that could form the basis for any liability and the Complaint does not explain otherwise.

According to Plaintiff's Complaint, Bontrager told Fattaey that Schulz and Mason "did not like him (but never specified a reason why), wanted him removed, wanted change, and they believed Plaintiff would not fit in with the change they wanted,"[107] making similar comments during the September 23, 2013 meeting that it was time for a change.[108]  KSU also gave him a year's notice of the non-renewal and paid him a year's salary while not requiring him to report to work.  There is nothing on the face of this that shocks the conscience or lacks any rational basis.  As Judge Melgren found in *Heublein*, even if KSU did not follow its Handbook (which is denied), that would not support a substantive due process claim.[109]  The substantive due process claim embedded in Plaintiff's Fifth Cause of Action (labeled "VIII"), must  be dismissed.[110]

**The Complaint Fails to Allege a Denial of Procedural Due Process**

In addition to the above-mentioned issues, including that a contract claim is not a Section 1983 claim, Fattaey's allegations that he was denied procedural due process are general and vague, boiling down to propositions that fail to support a procedural due process claim as a matter of law.

First, paragraph 127 states that plaintiff had a "legitimate expectation that he would not be subjected to unlawful discrimination based on his race and, in the event he was, a complaint

---

[106] Doc. 3, at ¶¶ 55, 61, 62, 63, 64.
[107] Doc. 3, at ¶ 83.
[108] Doc. 3, at ¶53.
[109] *Heublein*, at 1197 (citing *Babbar v Ebadi*, 2000 WL 702428 (10th Cir. May 26, 2000)).
[110] *See also, Babbar v. Ebadi*, 36 F. Supp. 2d 1269, 1282-84 (D. Kan. 1998), *aff'd*, 2000 WL 702428 (10th Cir. 2000) (granting judgment to KSU on a substantive due process claim by a professor who was denied tenure).

about the same would be immediately investigated by KSU and remedial action would be taken by KSU." Fattaey is essentially stating a Title VII discrimination claim in another guise; however, Section 1983 is not a substitute for Title VII.[111] Race discrimination is not a basis for a procedural due process claim. Fattaey also argues his "expectations described in Paragraphs 120 through 122" constitute a property interest.[112] Nothing in paragraphs 120-122 constitutes a property interest under Kansas law. Fattaey also states that based upon KSU's policies, past practice, and his "contract," he had an expectation that he would continue to be employed by KSU,[113] presumably forever, or guaranteed lifetime employment. [114] Whether a property interest exists is defined by state law.[115] Unilateral expectations or abstract needs or desires do not create a property interest.[116]

Fattaey had no protected property interest for purposes of a Section 1983 claim. The seminal case of *Board of Regents v. Roth* is on point. There, the Supreme Court held that a non-tenured professor employed on a one-year contract had no protected property interest for purposes of a Section 1983 procedural due process claim and therefore no right to a hearing when his contract was not renewed. There, Roth was hired and worked on a one-year contract with a specified term.[117] He was informed that he would not be rehired for the next year.[118] He had no tenure rights.[119] The Court noted that under Wisconsin law, "[a] relatively new teacher without tenure . . . is ...entitled to nothing beyond his one-year appointment," and that state law

---

[111] *Polson v. Davis,* 895 F.2d 705, 710 (10th Cir. 1990).

[112] Doc. 3, at ¶128.
[113] Doc. 3, at ¶ 125.
[114] Doc. 3, at ¶¶ 125-126. If his position was eliminated, Fattaey alleges KSU would "find him a suitable alternate position."Since Fattaey's position was not eliminated, this is irrelevant.
[115] *Bishop v. Wood,* 426 U.S. 341, 344 (1976) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)).
[116] *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).
[117] *Id.*, at 566.
[118] *Id.*
[119] *Id.*

left the decision whether to rehire the teacher to the "unfettered discretion of university officials."[120]   Also similar to Fattaey here, the only limitation on non-renewal was a requirement that notice be timely given, which it was.[121]  Roth was given notice of non-renewal, but no hearing.[122]  Roth sued in federal court, claiming his non-renewal violated substantive and procedural due process.[123]

The Court found that Roth had no protected property interest as the terms of his appointment controlled and specifically provided that his appointment was to terminate on a date certain and did not state on the document that it did not on its face provide for renewal absent sufficient cause.[124]  As the Court stated it, "[t]he terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement of re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it."[125]  In *Stoldt v. City of Toronto*,[126] the Kansas Supreme Court applied Roth and its progeny as well as Kansas law to hold that a city employee had no protected property interest in continued employment, citing Kansas law. In *Babbar v. Ebadi*, the Tenth Circuit affirmed Judge Lungstrum's judgment in favor of KSU on a similar procedural due process claim by a KSU professor who did not get tenure on grounds including no protected property interest, citing *Roth.*[127]

Similarly here, the terms of the "regular appointment," Exhibit B to the Complaint, provided that it was for a 12-month term and subject to notice of non-reappointment and did not

---

[120] *Id.,* at 566-67.
[121] *Id.,* at 567-68.
[122] *Id.,* at 568.
[123] *Id.,* at 568-69.
[124] *Id.* at 578.
[125] *Id.,* at 578.
[126] 234 Kan. 957, 964-65, 678 P.2d 153 (1984).
[127] 36 F. Supp. 2d 1269 (D. Kan. 1998), aff'd, 216 F.3d 1086 [table],2000 WL 702428,  9 (10th Cir. May 26, 2000).

lead to consideration for tenure. The Terminal Contract, Exhibit D, provided on its face that it was "Terminal," would end 9/26/14 (stated in bold face). Fattaey signed the Terminal Contract indicating his acceptance of its terms.  Both Exhibits B and D state that these appointments are subject to Kansas law and Board of Regents' policies. K.S.A. 76-715 provides that employees such as Fattaey serve "at the pleasure" of the chief executive and subject to Board policies, which provide all appointments "shall be annual."[128]  Fattaey cites no Kansas statute which creates a lifetime interest in State employment.  Exhibit C, upon which he relies, clearly states that despite the consideration given to those who have served more than five years, etc., appointments are subject to non-renewal provided those persons are given 12-months notice, which Fattaey was. If Fattaey believed the amount of notice was insufficient, he could have grieved it but did not.  KSU followed the procedures for non-renewal, which involves giving adequate notice, here, a year's notice of intent to non-renew.  If Fattaey thought there was something deficient about the notice given, he could have grieved that through KSU's policies. Moreover, he could have filed an action pursuant to the KJRA, K.S.A. 77-601, *et seq*. Rather, as per Plaintiff's Exhibit D, Fattaey accepted the offer of a Terminal Contract and its terms, including the $100,000 salary, on September 24, 2013.

**Plaintiff's Claims Are Barred by Qualified Immunity**

Plaintiff's claims against the individual defendants are also barred by qualified immunity. As this Court well knows, "[q]ualified immunity protects public officials performing discretionary functions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' Qualified immunity leaves 'ample room for mistaken judgments,' protecting 'all but the plainly incompetent or those

---

[128] Exhibit A hereto.

who knowingly violate the law.'"[129]  The Supreme Court recently reiterated the broadly

protective nature of the doctrine, stating  "[q]ualified immunity 'gives government officials

breathing room to make reasonable but mistaken judgments about open legal questions.'" In

*Lane v. Franks*,[130] the Supreme Court found that where the legal landscape was not clearly

established with regard to the employee's First Amendment rights, and the question was not

"beyond debate" when the defendant official Franks fired Lane on account of testimony he had

given, Franks was entitled to qualified immunity.

Therefore, to overcome a Rule 12(b)(6) motion based on qualified immunity, Plaintiff

bears a heavy, two-part burden to demonstrate that: (1) the facts Plaintiff alleged make out a

violation of a constitutional right, and (2) the right at issue was 'clearly established' at the time

of the Defendant's alleged misconduct.[131]  To satisfy this burden, the Plaintiff may not merely

identify in the abstract a clearly established right, such as due process, and generally claim a

Defendant violated it. Rather, a Plaintiff must show that the right which Defendant is alleged to

have violated was clearly established "in a more particularized, and hence more relevant

sense."[132] "The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."[133]

In *Stewart v. Beach*, for example, the Tenth Circuit affirmed as appropriate this Court's

framing of the issue for qualified immunity purposes when an inmate had to cut his dreadlocks

before boarding a prison bus as whether it was clearly established that the defendant correction

officers violated Plaintiff inmate's First Amendment free exercise right by requiring him to cut

---

[129] *Lee v. Shanklin,* No. 12-CV-2638-JAR, 2015 WL 4496266, * 1 (D. Kan. July 23, 2015) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) and *Malley v. Briggs,* 475 U.S. 335, 341, 343 (1986)).
[130] 134 S. Ct. 2369, 2381-83 (2014).
[131] *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).
[132] *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).
[133] *Id.*, at 639-40.

his hair for security reasons, rejecting the inmate's argument that the right in question had to be more broadly defined.[134] This Court's more specific formulation, the Circuit stated, helped in determining whether the reasonable correction officers would have had the requisite warning and would have known that their conduct was unlawful under clearly established law in the situation they confronted.[135]

Nothing in this Complaint supports a cause of action against the individual defendants, and certainly nothing that would overcome their entitlement to qualified immunity. Each individual is entitled to have his or her own situation considered separately in this regard.[136] The factual allegations as to actual actions by each defendant are razor thin, *e.g.*, Plaintiff alleges that in 2013, Schulz, Bontrager and Mason formed a committee for the position Swanson was hired into, asked that Fattaey apply (he didn't),[137] they (and Swanson and Franzen), did not log his internal discrimination complaint, did not investigate or further publicize that complaint (which on Fattaey's request was deferred to the KHRC),[138] did not make an announcement regarding his departure,[139] and Schulz and Mason did not form a relationship with him.[140] None of this is a basis for a 1983 claim, and certainly nothing that would overcome qualified immunity.

**Plaintiff's Allegations of Conspiracy Fail to State a Claim**

As indicated above, the conspiracy claims are time-barred. However, Plaintiff's state law and federal conspiracy claims ("V" and VII) fail for related reasons and for separate reasons.

---

[134] 701 F.3d 1322, 1330-31 (10th Cir. 2012)
[135] *Id.*
[136] *Lee v. Shanklin,* No. 12-2638-JAR, 2015 WL 4496266,  10 (D. Kan. July 23, 2015).
[137] Doc. 3, at ¶¶ 33-34, 36.
[138] *Id.*, at ¶¶ 61, 62, 63, 64, 65, 67.
[139] *Id.*, at ¶¶ 73, 89.
[140] *Id.*, at ¶ 84.

*First*, KSU and its officials constitute a single legal entity and cannot conspire with itself.[141]  This very issue was addressed by the Kansas Supreme Court long ago in *May v. Santa Fe Trail Transportation* in addressing a similar breach of employment contract claim.[142]  There, the employee sued his employing corporation and three individual officials, claiming that he was unlawfully discharged, and that this was actionable as a conspiracy.  In affirming the lower court's dismissal,[143] the Kansas Supreme Court rejected May's argument on several grounds, including that just adding words and phrases did not transform an action for breach of employment contract into a conspiracy.[144]  Facts, including facts showing unlawful acts, must be alleged.[145]  The Court also cited the general rule that absent sufficient allegations that the individual defendants acted in any capacity other than their official corporate capacity on behalf of the corporation or acted outside of their capacity and outside of their confidential relationship to the corporation, "the acts of the individual defendants must be regarded as acts of the corporation and when so acting they cannot conspire with the corporation of which they are a part."[146]  The conduct of the officers was deemed privileged.[147]

Similarly here, the Complaint lacks sufficient factual allegations (as opposed to conclusory allegations), that the KSU officials acted outside of their respective official capacities with regard to Fattaey, assuming, for the sake of argument, that anyone other than Bontrager, who signed the letter, took any action with regard to Fattaey.  Plaintiff's allegations are merely conclusory, lacking specific facts as required to plead a conspiracy claim.

---

[141] *Auld v. Value Place Property Mgt., LLC,* No. 09-1139-EFM, 2010 WL 610690, *9 (D. Kan.  Feb. 19, 2010) (dismissing conspiracy claim against individual defendants, corporate officers acting within the scope of their respective employment) (citations omitted); *Barger v. State of Kansas*, 620 F. Supp. 1432, 1435 (D. Kan. 1985).
[142] 189 Kan. 419, 370 P.2d 390 (1962).
[143] *Id.*, at 425.
[144] *Id.*, at 423.
[145] *Id.*, at 423-24.
[146] *Id.*, at 424-25.
[147] *Id.*, at 425.

Defendants acknowledge that although there are some District of Kansas decisions adopting the intracorporate conspiracy doctrine to bar a 1985(3) conspiracy claim,[148] there is currently a split among the federal circuits on this issue and in 1994, the Tenth Circuit refused to adopt the doctrine in a case involving a corporation, *Brever v. Rockwell Int'l Corp.*.[149] However, Defendants contend that in the context of university officials acting as alleged here with regard to staffing decisions made in their official capacities and with no evidence of a personal interest, the better rule is reflected in *Chambliss v. Foote,* which involved a similar claim by a non-renewed university teacher,[150] and in the line of cases adopting this doctrine.[151]

*Second*, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."[152] Conclusory allegations are also insufficient under 1985(3), which contains additional requirements discussed below.[153]

This Court addressed and dismissed similar state law and federal civil rights conspiracy claims in *Lee v. Kansas State University*, finding that both claims required a meeting of the minds, agreement and concerted action among the defendants, which were not satisfied there

---

[148] *See, e.g., Barger v. State of Kansas,* 620 F. Supp. 1432, 1435 (D. Kan. 1985) (citing *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir. 1972) and other cases).

[149] 40 F.3d 1119, 1126-27 (10th Cir. 1994) (acknowledging the circuit split).

[150] 421 F. Supp. 12, 15 (E.D. La. 1976).

[151] *See, e.g, Bowie v. Maddox,* 642 F.3d 1122, 1130 (D.C. 2011) ("At least seven circuits have held the intracorporate conspiracy doctrine applies to civil rights conspiracies") (citing cases). Because of the numerous other arguments made herein in favor of dismissal and the page-limitations on briefing, this argument is not necessary to dismissal but can be briefed in further detail should the Court so desire. .

[152] *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (quoting *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989);  *see Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (rejecting allegations of conspiracy as conclusory).

[153] *O'Connor v. St. John's College,* 290 Fed. Appx. 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations', but rather, 'must be pled with some degree of specificity.'") (citations omitted); *Lewis v. Standard Motor Prod., Inc.*, 203 F. Supp. 2d 1228, 1237 (D. Kan. 2002) ("Conclusory allegations of conspiracy without supporting factual averments are insufficient to state a claim under §1985(3). Plaintiff's pleadings must specifically present facts tending to show agreement and concerted action.") (citations omitted); *see generally, Sooner Prod. Co. V. McBride,* 708 F.2d 510, 512 (10th Cir. 1983)).

given the lack of factual detail; conclusory allegations were insufficient under either federal or state law.[154]

Similar to *Lee*, the allegations in the First Amended Complaint are purely conclusory, failing to allege specific facts showing communication, agreement, a meeting of the minds, or concerted action among President Schulz, April Mason, Cindy Bontrager or Ryan Swanson in their individual capacities in furtherance of the alleged conspiracy.[155]  The allegations here are even less than those found insufficient to support a conspiracy claim by this Court in *Lee* or  in the case of a dismissed tenured KU law professor who argued a conspiracy based upon the fact that some law school faculty members met with administrators during the investigatory process and signed a letter soliciting complaints against him.[156]  Although the professor's allegations were more specific than those made here, the Tenth Circuit found these were merely conclusory allegations, insufficient to state a claim for Section 1983 conspiracy or to overcome qualified immunity.[157]  The Tenth Circuit similarly affirmed dismissal of a conspiracy claim by a graduate student in *Salehpoor v. Shahinpoor*.[158]  Fattaey's conspiracy claim consists of conclusory allegations and does not plausibly state a claim for relief. It should be dismissed.

Further, and as argued in other sections herein, there was nothing unlawful about giving Fattaey 12-months notice and 12-months pay and telling him that his annual employment contract was not going to be renewed. In particular, Plaintiff's appointment states that it is

---

[154] No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, **12-13 (D. Kan. June 7, 2013) (citing *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (1984) and *Tonkovich v. Kansas Bd. Of Regents,* 159 F.3d 504, 533 (10th Cir. 1998)). *See also, Hall v. Doering,* 997 F. Supp. 1445, 1451-52 (D. Kan. 1998) ("plaintiff must allege facts which show a mutual understanding or meeting of the minds amongst the conspirators").  *See generally, Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230-31 (10th Cir. 1990).

[155] *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010); *see Twombly*, 550 U.S. at 564-66 & n.10 (mere conclusions of conspiracy based upon nothing more than parallel conduct without specific facts showing time, place and names of conspirators insufficient).

[156] *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

[157] *Id.*

[158] 358 F.3d 782, 789 (10th Cir. 2004).

annual, and subject to "all provisions of the laws of Kansas," including policies of the Board of

Regents, which require annual appointments as per K.S.A. 76-715 .[159]   Plaintiff's "Second"

Cause of Action requires him to show the elements of civil conspiracy, which include: "(1) two

or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or

course of action; (4) one or more unlawful acts; and (5) damages as the proximate result

thereof."[160]   Conspiracy is not actionable without an underlying wrong giving rise to a cause of

action independent of the conspiracy – "the civil conspiracy must be supported, as one of its

elements, by one or more unlawful, overt acts which produce an unlawful result."[161]   Thus, in

*Stoldt v. City of Toronto*, the Kansas Supreme Court affirmed the dismissal of the employee's

conspiracy claim based upon his termination where there was nothing unlawful about the

underlying dismissal. The same result obtains here.

        In addition to the above, Plaintiff's Complaint fails to state a claim for conspiracy under

42 U.S.C. § 1985(3), which contains additional special requirements.  That statute provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway
> or on the premises of another, for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws; or if two or more persons conspire to prevent by force,
> intimidation or threat, any citizen who is lawfully entitled to vote, from giving his support
> or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified
> person as an elector for President or Vice President, or as a Member of Congress of the
> United States; or to injure any citizen in person or party on account of such support or
> advocacy; in any case of conspiracy set forth in this section, if one or more persons
> engaged therein do, or cause to be done, any act in furtherance of the object of such
> conspiracy, whereby another is injured in his person or property, or deprived of having
> and exercising any right or privilege of a citizen of the United States, the party so injured
> or deprived may have an action for the recovery of damages.

As the Circuit has stated:

---

[159] Exhibit B to Plaintiff's First Am. Complt.
[160] *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P2.d 153 (1984) (quoting *Citizens State Bank of Gilmore*, 226 Kan. 662, 603 P.2d 605 (1979)).
[161] *Id.*

"Firstly, a valid claim must, of course, involve a conspiracy. Secondly, however, § 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 101–02, 91 S.Ct. at 1798. . . .. In fact, the Supreme Court has held that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause." *Id*. at 836, 103 S.Ct. at 3360. Thirdly, and most importantly for this appeal, § 1985(3) covers only conspiracies "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id*. at 833, 103 S.Ct. at 3359. . . The statute does not apply, we said, to private conspiracies that are "aimed at a right that is by definition a right only against state interference," but applies only to such conspiracies as are "aimed at interfering with rights ... protected against private, as well as official, encroachment." 463 U.S. at 833 [103 S.Ct. at 3359]. There are few such rights (we have hitherto recognized only the Thirteenth Amendment right to be free from involuntary servitude, *United States v. Kozminski*, 487 U.S. 931 [108 S.Ct. 2751, 101 L.Ed.2d 788] (1988), and, in the same Thirteenth Amendment context, the right of interstate travel, *see United States v. Guest*, [383 U.S. 745], 759 n. 17 [86 S.Ct. 1170, 1179 n. 17, 16 L.Ed.2d 239] [ (1966) ] ).... In short, to state a claim under 42 U.S.C. § 1985(3) for a non-racially motivated private conspiracy, if indeed such a claim can be stated, it is necessary to plead, inter alia:

1. that the conspiracy is motivated by a class-based invidiously discriminatory animus; and 2. that the conspiracy is aimed at interfering with rights that by definition are protected against private, as well as official, encroachment.

There are few rights protected against private, as well as official, encroachment. The Supreme Court has recognized only "the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel." *Bray*, 506 U.S. at ——, 113 S.Ct. at 763 (citing Kozminski, 487 U.S. at 942, 108 S.Ct. at 2759, and *Guest*, 383 U.S. at 759 n. 17, 86 S.Ct. at 1179 n. 17).[162]

Fattaey's claims in this case do not involve the Thirteenth Amendment right to be free

from involuntary servitude or the Thirteenth Amendment right to interstate travel. His claims do

not fall within the narrow confines of this specialized statute.  The U.S. Supreme Court has

expressly held that Section 1985(3) "may not be invoked to redress violations of Title VII."[163]

---

[162] *Tilton v. Richardson*, 6 F.3d 683, 686♥87 (10th Cir. 1993)

[163] *Great Am. Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (affirming dismissal  of 42 U.S.C. 1985 claim by employee claiming employment discrimination).

Such a construction, among other things, would undermine the policies and requirements of Title VII, including exhaustion.[164]

The Complaint fails to allege facts showing that President Schulz, Vice President Bontrager, Provost April Mason and Ryan Swanson had any meeting of the minds to conspire against Fattaey because of his national origin or to present a plausible claim that any actions taken with regard to Fattaey were motivated by invidious class-based animus.[165] Fattaey admits that he had worked for KSU since 1971 and held his final position since 2006.[166] Schulz was President since 2009, Bontrager became Fattaey's supervisor in October 2012, and the Complaint is silent as to the other defendants. The Complaint is also internally inconsistent. Fattaey contends that at the September 23, 2013 meeting Bontrager told him that the reasons for non-renewal were a desire for change.[167] Fattaey himself has variously claimed that the non-renewal was because of his age,[168] because of his religion,[169] because of his national origin (Iranian), or because of his race. Fattaey also states that Bontrager told him Schulz and Mason did not like him but he admits she never said why and certainly does not state that he was told the non-renewal was because of his national origin. There is nothing in this Complaint other than Fattaey's pure speculation that his non-renewal had anything to do with his status as an "Iranian Muslim." Fattaey fails to plead facts showing that each of the individual defendants were aware of his national origin and religion prior to his making it an issue after he received his Terminal Contract. Other than a single stray comment that Fattaey attributes to Bontrager which allegedly occurred even months prior to Swanson being hired and therefore many months prior

---

[164] *Id.*
[165] *Gallegos v. City and County of Denver,* 984 F. 3d 358, 364 (10th Cir. 1993); *Dixon v. City of Oklahoma,* 896 F.2d 1443, 1448 (10th Cir. 1990) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).
[166] Doc. 3, at ¶¶ 11, 13, 15.
[167] Doc. 3, at ¶ 53.
[168] Doc. 3, at ¶¶ 13, 41, 55.
[169] Doc. 3, at ¶¶ 13,107.

to the September 23, 2013, meeting, which allegedly referred to his accent and culture generally (which she denies making and is not itself indicative of racial bias or animus on Bontrager's part, about why people didn't like him),[170]  Fattaey's Complaint is devoid of factual allegations about alleged race or national origin comments by any defendant. As Courts have acknowledged in similar circumstances, one or two stray comments are insufficient to support a claim of discriminatory animus or bias.[171]

Alternatively, and in any event, Plaintiff has failed to plead any basis that would overcome the defense of qualified immunity, discussed in connection with the 1983 claims, which also applies to claims asserted under 42 U. S. C. §1985(3).[172]

**Plaintiff's Claim for Tortious Interference Is Time-Barred and Fails to State a Claim**

Assuming the Court exercises jurisdiction, Plaintiff's Third Cause of Action, labeled "VI," the state law claim for tortious interference with contract, is subject to dismissal for several reasons.

*First*, this claim is subject to the two-year statute of limitations period under K.S.A. 60-513(a)(4) for personal injury claims.[173] As Judge Marten of this District noted, "Kansas law recognizes that a claim for tortious interference with contract accrues when the injury is **reasonably ascertainable** though the full actual loss may not happen until later."[174] Here, it is undisputed that Fattaey knew of his alleged injury, the non-renewal of his contract, on September

---

[170] Doc. 3, at ¶ 42.

[171] *See, e.g., Crawford v. Kansas City, Kan.*., 952 F. Supp. 1467, 1476 (D. Kan. 1997); Hajjar-Nejad  *v. George Washington Univ.*, 37 F. Supp. 2d 90, 125-26 (D.D.C. 2014) (citation omitted).

[172] *Gallegos,* 984 F.2d at 364.

[173] *Hayden Outdoors, Inc. v. Niebur,* 994 F. Supp. 2d 1206, 1208 (D. Kan. 2014).

[174] *Id.* (citations omitted).

23, 2013.[175] However, he did not bring this action until October 13, 2015, more than two years later.[176]  Therefore, this claim is time-barred, and must be dismissed.

*Second,* to the extent that the tortious interference claim is just another way of arguing the breach of contract claim (lacking any additional factual basis for any independent tort), it is barred for the reasons previously stated as to KSU.

*Third,* Kansas law is clear that corporate officers and employees acting within the scope of their employment cannot be held liable for tortious interference with a contract. The theory is that since these officers work for KSU, the contracting party, their conduct is considered privileged.[177]  Kansas recognizes no exceptions to this rule.[178]  Here, Interim Vice President Bontrager was the only KSU official who signed the notice of non-renewal and the Terminal Contract, although by her name it states, "By direction of the President." [179] The letter went out on Ms. Bontrager's official KSU letterhead, as did the Terminal Contract. Other than identifying each by their KSU title and position,[180] Fattaey's allegations about Schulz, Mason or Swanson are purely conclusory and/or speculation on his part. Fattaey fails to allege facts showing that Schulz, Mason or Swanson acted outside of their authority as KSU officials, presuming that they acted at all in this matter.  The Complaint fails to demonstrate a factual basis from deviating from the general rule of non-liability for corporate officers recognized and applied in Kansas.

*Fourth,* Plaintiff's Complaint fails to state facts sufficient to support a plausible claim under this tort against Schulz, Mason, Bontrager and Swanson.  The essential elements for this tort are: (1) the existence of a contract between the plaintiff and a third party; (2) the

---

[175] Exhibit D to First Amended Complaint.
[176] Doc. 2.
[177] *Clevenger v. Catholic Social Serv. Of Archdiocese of Kansas City in Kansas, Inc.*, 21 Kan. App. 2d 521, 525-28, 901 P.2d 529 (1995).
[178] *Id.*, at 527.
[179] Exhibit D (Doc. 3-5) to Plaintiff's First Am. Complt.
[180] Plaintiff's First Am. Complt., at ¶¶ 3-7.

wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) resulting damage to the plaintiff.[181] The Complaint fails to show each of these required elements as to each defendant.

More specifically, the Complaint fails to set forth the existence of a valid and enforceable contract that was allegedly subject to interference as required for such a claim.[182] Here, there was no contract other than the Terminal Contract contained in Exhibit D. No contract for any term beyond the terminal date of September 26, 2014 was entered into by KSU and Fattaey. Fattaey does not allege that he did not received the promised $100,000-plus in compensation due under this contract, which was the one and only contract which he attaches. As Judge Lungstrum of this District held in granting summary judgment to KSU on a similar claim based upon a Terminal Contract in *Babbar v. Ebadi*,[183] there is no contract and no breach and no basis for a tortious interference claim. Similar to the Plaintiff in *Rodriguez v. ECRI Shared Services*, cited by Judge Lungstrum in his decision, KSU followed the terms allowing termination without cause, including the notice provision. There was no breach. There was also no damage to Plaintiff, as he does not allege that he failed to receive the full payment due under his Terminal Contract.

Although Bontrager signed the letter and the Terminal Contract, the Complaint contains no facts showing the required elements as to Schulz, Mason or Swanson. Even as to Bontrager, she reportedly told him it was time for a change, which would be justification for discontinuing the relationship, provided that the notice requirements were met as they were here. As Judge Lungstrum held on a similar claim, the claim is baseless and should be dismissed.

---

[181] *Rodriguez v. ECRI Shared Serv.*, 984 F. Supp. 1363, 1366-67 (D. Kan. 1997).
[182] *Macke Laundry Serv. Ltd. Partnership v. Mission Assocs.*, 19 Kan. App. 2d 553, 873 P.2d 219 (1994).
[183] 36 F. Supp. 2d 1269, 1275 (D. Kan. 1998).

## CONCLUSION

For all of the reasons stated herein, Defendants Kansas State University, Kirk Schulz, Cindy Bontrager, April Mason, Ryan Swanson and Roberta Maldonado Franzen respectfully request that this action be dismissed as per Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

/s/M.J. Willoughby
M.J. Willoughby, KS #14059
Assistant Attorney General
Memorial Hall, 120 SW 10th
Topeka, KS 66612
(785)296-2215
MJ.Willoughby@ag.ks.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 19th day of February, 2016, the above and foregoing was filed via the Court's electronic filing system which delivers a copy to registered participants including Attorneys for Plaintiff Kevin Koch, Patrick G. Reavey, Livestock Exchange Building, 1600 Genessee, Suite 303, Kansas City, MO 64102, preavey@reaveylaw.com, kkoch@reaveylaw.com.

/s/M.J. Willoughby
M.J. Willoughby, Assistant A.G.