# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ABDULLAH ("ABE") FATTAEY,

    **Plaintiff,**

    v.

KANSAS STATE UNIVERSITY, ET AL.,

    **Defendants.**

Case No. 15-9314-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Abdullah ("Abe") Fattaey's Second Amended Complaint alleged claims against his former employer, Kansas State University ("KSU"), and several University employees, relating to the decision not to reappoint him when his annual employment contract with KSU expired. On January 24, 2017, the Court issued an extensive Memorandum and Order on Defendants' Motion to Dismiss Second Amended Complaint, granting in part and denying in part that motion.[1] The Court denied the motion to dismiss as to his Title VII claims against KSU, and granted the motion to dismiss civil rights claims under 42 U.S.C. §§ 1983 and 1985(3) premised on violations of Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment. Before the Court is Plaintiff's Motion for Leave to File an Amended Complaint and Motion to Extend Deadline to File Third Amended Complaint (Doc. 56). The motion is fully briefed and the Court is prepared to rule. The Court grants Plaintiff's motion as explained more fully below.

---

[1] Doc. 55.

**I.     Background**

Prior to the Court's January 24 Order, Plaintiff amended his complaint twice. He amended once as a matter of course, and amended a second time after Defendants filed their first motion to dismiss. After Plaintiff was granted leave to amend, and after Defendants filed their renewed motion to dismiss the Second Amended Complaint, Plaintiff voluntarily dismissed certain claims that rendered moot several arguments raised in the motion to dismiss. This Court ruled on the remaining claims briefed by the parties: Count I—Title VII discrimination and retaliation claims against KSU based on race and national origin; Count IV—conspiracy claim under 42 U.S.C. § 1985(3) against Defendants Schulz, Mason, Bontrager, and Swanson in their individual capacities; and Count V—procedural and substantive due process claims under 42 U.S.C. § 1983 against Defendants Schulz, Mason, Bontrager, Swanson, and Franzen. The Court denied Defendants' motion as to Count I against KSU, and granted the motion as to the civil rights claims under the doctrine of qualified immunity. In addition, due to the confusing sequence of Plaintiff's amendments and filings, the Court ordered Plaintiff to file a Third Amended Complaint as follows:

> After several rounds of amendments and other adjustments to his claims, Plaintiff is left with Title VII claims of national origin discrimination and retaliation against KSU. His civil rights claims against the individual Defendants are subject to qualified immunity and must be dismissed. All other claims in the Second Amended Complaint have been withdrawn. Plaintiff has requested leave to file another amended pleading to make clear that he has voluntarily dismissed certain claims since the Second Amended Complaint was filed, and to properly plead administrative exhaustion on his Title VII claims. The Court agrees that an amended pleading is warranted to make the record clear as to what remains. Plaintiff's Third Amended Complaint shall be filed within seven days and shall omit the claims Plaintiff voluntarily dismissed, add his administrative exhaustion allegations, and omit the civil rights claims dismissed herein based on the doctrine of qualified immunity.[2]

---

[2]*Id.* at 36.

On January 31, 2017, Plaintiff filed the instant motion for leave to amend, attaching a proposed Third Amended Complaint. In this motion, he argues that the 42 U.S.C. § 1983 claim in the Second Amended Complaint against the individual defendants included a claim that they violated the Fourteenth Amendment's equal protection clause. He asks for an extension of time to file the Third Amended Complaint until the Court can rule on whether his proposed pleading, which includes this civil rights claim, is permissible. Plaintiff seeks to allege this claim against Defendant Bontrager in her individual capacity. Defendant objects, arguing that the amendment is sought in bad faith, will cause undue delay, and that it would be subject to dismissal.

## II.    Standard

The parties argue this motion as a motion for leave to amend, governed by Fed. R. Civ. P. 15(a). Under Rule 15(a), leave to amend a complaint is freely given when justice so requires. Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[3] Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[4]

But this is not a typical motion for leave to amend. This Court has already granted leave to amend under strict parameters, as set forth in the quoted passage above. As to the equal protection claim, Plaintiff does not necessarily seek leave to amend to add that claim; he contends that this claim was included in the Second Amended Complaint. Plaintiff concedes that this claim was not clearly labeled as a separate claim for relief, but urges that Defendants are not

---

[3]*Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[4]*Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3

prejudiced by allowing him to plead this claim because it is based on the same elements and facts as the Title VII claims, which the Court allowed to proceed in the January 24 Order. The parties also dispute whether some of the factual allegations in the proposed Third Amended Complaint pertain strictly to the claims dismissed in the Court's January 24 Order. Because the parties appear to have interpreted the Court's January 24 Order quite differently, the Court will first clarify the scope of the Second Amended Complaint. The Court will then proceed to consider Plaintiff's proposed Third Amended Complaint under the Rule 15(a) factors.

### III. Scope of the Court's January 24, 2017 Order

#### A. Equal Protection Claim

Under Fed. R. Civ. P. 8(a)(2), a complaint only requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] It does not require the plaintiff to set forth legal theories.[6] Nonetheless, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[7] Plaintiff's request to include the equal protection claim in his Third Amended Complaint raises the issue of whether he fairly gave Defendant notice of this claim in the Second Amended Complaint, given Plaintiff's position that it had been alleged all along.

---

[5] Defendant makes several references in its response memorandum to the length of Plaintiff's proposed Third Amended Complaint, suggesting that its breadth somehow violates this precept. Of course, while a short and plain statement of the claim is all that is required, there is no prohibition under the rule to pleading more than that. And of course, the entire premise of Defendant's motion to dismiss was that Plaintiff's allegations were insufficient. The Court will not penalize Plaintiff for providing Defendant with more detail about the basis for his claims than what is required under the rule.

[6] *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014); *Zokari v. Gates*, 561 F.3d 1076, 1084 (10th Cir. 2009).

[7] *Zokari*, 561 F.3d at 1084 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) ("As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1219 at 194 (1990))).

The Court begins this discussion by acknowledging Defendant's frustration with the protracted nature of Plaintiff's pleading in this case. Defendants are understandably frustrated that they were required to litigate two motions to dismiss, the second of which addressed claims ultimately abandoned by Plaintiff in a later filing, and that despite believing they had certainty about the claims remaining, Plaintiff once again attempts to amend. Defendants claim that they were not on notice of an equal protection claim in the Second Amended Complaint. To be sure, despite moving for complete dismissal of those pleadings, the motions to dismiss did not address an equal protection claim. Defendants moved to dismiss that pleading on February 19, 2016, at which time Plaintiff was placed on notice of the many other deficiencies Defendants identified in the First Amended Complaint. Defendants sought dismissal of the entire pleading, construing Count V as asserting only procedural and substantive due process claims. This motion was ultimately moot because Plaintiff sought and was granted leave to amend. The point of granting leave to amend in this context is to allow the Plaintiff an opportunity to cure the deficiencies identified in a motion to dismiss. Yet, Plaintiff filed his Second Amended Complaint with the same misleading label on Count V, and Defendants moved to dismiss the civil rights claims on the same grounds. In other words, Plaintiff did not point out in the briefing on the second motion to dismiss (or the first, for that matter) that this Count included an equal protection claim. Had Defendants been on actual notice that Plaintiff alleged an equal protection claim, they surely would have addressed it in their motions to dismiss. And the Court is mystified as to why Plaintiff would not advance this claim in his response to the motions to dismiss.

Nonetheless, the Court agrees that the Second Amended Complaint does indeed assert an equal protection claim. Plaintiff labeled Count V of the Second Amended Complaint: "CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §§

1983, 1988; VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS AGAINST DEFENDANTS [] SCHULZ, MASON, BONTRAGER, SWANSON, AND FRANZEN."[8] Under this Count's heading, in paragraph 152, Plaintiff alleges:

> Defendants Schulz, Mason, Bontrager, Swanson, and Franzen's decision (in their individual capacities and acting under color of state law) to deprive Plaintiff of his property rights based on Plaintiff's race, ancestry, and ethnicity, and based on his complaint of unlawful discrimination, deprived Plaintiff of his equal protection rights under the 14th amendment of the Constitution.[9]

Although Plaintiff failed to properly label Count V, that is not the dispositive inquiry.[10] The Court cannot ignore the substance of this claim, which alleged Plaintiff's entitlement to relief under the equal protection clause. The Court agrees that despite Plaintiff's inexplicable failure to draw attention to this claim during the briefing of the motion to dismiss, the Second Amended Complaint should have placed Defendants on notice of his intent to assert such a claim under the equal protection clause. To the extent Defendants argue that Plaintiff has alleged insufficient facts to support an equal protection claim, the Court will address this argument below when analyzing futility of amendment.

### B. Title VII Claims

In its previous Order, the Court denied Defendant's motion to dismiss Plaintiff's Title VII claims of discrimination and retaliation. Defendant objects to certain allegations in Plaintiff's proposed Third Amended Complaint relating to these claims, arguing that they exceed the scope of the Court's Order. Defendants contend that Plaintiff's proposed pleading violates the Court's

---

[8] Doc. 33 at 27–28. Plaintiff subsequently dismissed this claim as to KSU. Plaintiff used this same wording to describe the claim in the First Amended Complaint. *See* Doc. 3 at 25.

[9] Doc. 33 ¶ 152.

[10] *See Johnson*, 135 S. Ct. at 347 (explaining that a civil rights plaintiff need not expressly invoke § 1983 in order to state a claim); 5 Charles Alan Wright, et al., Federal Practice and Procedure § 1215 (3d ed. 1998 & Supp. 2017) ("this portion of Rule 8 indicates that a basic objective of the rules is to avoid civil cases turning on technicalities.").

Order by including: (1) references to "Defendants" throughout; (2) language about race, age, and religious discrimination; (3) allegations regarding Defendant Franzen's failure to investigate Plaintiff's complaints of discrimination; and (4) allegations that exceed the adverse employment action upon which Plaintiff's retaliation claim was allowed to proceed. Defendants urge that the law of the case doctrine prohibits Plaintiff from reasserting claims that have been dismissed.

The Court need not delve into the law of the case doctrine because Defendants read this Court's ruling too narrowly on the Title VII claims. It is true that Plaintiff has no actionable claim remaining for discrimination based on his age or religion, but the Court did not rule on whether Plaintiff can maintain a Title VII claim on the basis of his race. The Second Amended Complaint made clear that he alleged Title VII claims on the basis of both race and national origin discrimination.[11] Defendant did not challenge Plaintiff's membership in a protected class, so the Court was not required to consider whether Plaintiff alleged sufficient facts to support a racial discrimination claim. Likewise, because the Court found that Plaintiff alleged sufficient facts to demonstrate a claim of national origin discrimination, the Court was not required to separately address his race discrimination claim.

As to Plaintiff's allegations about KSU's failure to investigate, the Court found that Plaintiff could not maintain a claim of discrimination on the basis of Franzen's failure to investigate his internal discrimination complaint. Defendants are correct that the Court dismissed Plaintiff's discrete claim of discrimination on the basis of this adverse employment action because Plaintiff failed to administratively exhaust. However, that does not mean that Plaintiff's allegations about KSU's failure to investigate may not be relevant to his surviving Title VII claims. Defendants' complaints about relevance and prejudice are evidentiary, and

---

[11]Doc. 33 at 21 (PLAINTIFF'S FIRST CAUSE OF ACTION (PLED AGAINST KSU): VIOLATION OF TITLE VII—ILLEGAL DISCRIMINATION (BASED ON RACE AND NATIONAL ORIGIN) AND RETALIATION).

questions of evidence are not properly before this Court on a motion for leave to amend.

To the extent the parties otherwise dispute whether Plaintiff's factual allegations in the proposed Third Amended Complaint exceed the scope of what the Court allowed to proceed in its January 24 Order, the Court is confident that upon a meaningful meet and confer session, the parties can work through their differences and Plaintiff can construct a Third Amended Complaint that maintains his Title VII allegations in compliance with the Court's Order. Defendants are cautioned that the Court does not view Plaintiff's pleading obligation in this regard as a mathematical formula whereby the number of paragraphs in the Third Amended Complaint correlate to the amount of claims that survive. To the extent Defendants believe Plaintiff's allegations are irrelevant, that issue is premature, particularly given that discovery has been completely derailed while the parties endlessly litigate the operative pleading in this matter.

## IV. Amendment Factors

### A. Undue Delay and Prejudice

Undue delay alone is sufficient to deny a motion to amend; there need not be a showing of prejudice.[12] In the Tenth Circuit, undue delay may be found "when the party filing the motion has no adequate explanation for the delay."[13] The Court may also deny leave to amend if the moving party "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint."[14] Moreover, motions for leave to amend are correctly denied

> when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target" to "salvage a lost case by untimely suggestion of new theories of recovery," present "theories seriatim" in an effort to avoid dismissal, or to "knowingly delay[ ]

---

[12]*See, e.g.*, *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1229–30 (D. Kan. 2002).

[13]*Minter v. Primer Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

[14]*Cuenca*, 205 F. Supp. 2d at 1230.

raising [an] issue until the eve of trial."[15]

While liberality of amendment is important, it is equally important that "there must be an end finally to a particular litigation."[16]

Although Plaintiff has caused significant delay in failing to make clear that he alleges an equal protection claim in this matter, the Court has largely addressed this factor by finding that the Second Amended Complaint should have placed Defendant on notice that Plaintiff asserts an equal protection claim, despite its shortcomings in terms of clarity and Plaintiff's failure to outwardly pursue this claim. Because Plaintiff did include this claim in the prior pleading, the Court declines to find that the proposed amendment is a moving target, or that he knew the facts upon which the amendment is based and failed to allege them previously.[17]

Importantly, the Court also finds that allowing this amendment will not cause prejudice to Defendant under the circumstances of this case because the elements of Plaintiff's equal protection claim are identical to the elements of his Title VII discrimination claim that survived the motion to dismiss.[18] Given this fact, and the fact that discovery has not yet begun, the Court declines to find that the amendment will cause undue delay.

---

[15]*Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994); *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995)).

[16]*Pallottino*, 31 F.3d at 1027.

[17]Defendant argues that Plaintiff should have pled his Title VII claims earlier, but of course that is not the question before the Court on this motion. Judge Gale found no undue delay in ruling on an earlier motion to amend seeking to add the Title VII claims. Doc. 32 at 5.

[18]*See Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)).

B.  **Futility**

Defendant argues that Plaintiff's proposed equal protection claim is futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[19] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[20] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[21] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[22] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[23] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[24]

First, Defendants argue that Plaintiff's equal protection claim cannot survive dismissal because such a claim is not cognizable in the public employment context, citing *Engquist v. Oregon Department of Agriculture*.[25] The Court disagrees with Defendants that the *Engquist* decision applies to Plaintiff's claim in this case. *Engquist* holds that a "class-of-one" equal

---

[19]*Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013).

[20]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[21]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[22]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[24]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[25]553 U.S. 591, 602, 607–08 (2008).

protection theory does not apply in the public employment context.[26] Such a theory has been recognized in some circumstances where a "plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"[27] The Supreme Court was careful to limit its decision to that theory of equal protection, distinguishing it from class-based decisions, where the government treated distinct groups of individual employees differently.[28] Here, Plaintiff does not allege a claim under a class-of-one theory; he claims discrimination on the basis of his membership in a protected class—race and national origin. *Engquist* does not apply.

Defendants also argue that the equal protection claim fails to include factual allegations that give rise to a plausible claim. Specifically, they argue that Plaintiff fails to allege that he was treated differently than similarly situated employees. As the Court has already observed, the elements of a racial discrimination claim under § 1983 are the same as those required under Title VII.[29] To establish a prima facie case of discrimination under Title VII, Plaintiff must show that

(1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.[30] In the Tenth Circuit, the prima facie case no longer requires a "similarly-situated person" comparison.[31] While the third element may be shown by evidence that the employer treated similarly-situated employees more favorably, "such proof is just one sufficient

---

[26]*Id.* at 607.

[27]*Id.* at 601.

[28]*Id.* at 605.

[29]*See Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)).

[30]*EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n.5 (10th Cir. 2007).

[31]*See Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 n.1 (10th Cir. 2015); *Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005).

11

means to do this and should not itself be mistaken as an indispensable element of the prima facie case."[32] As the Court explained in ruling on the Title VII claim, Plaintiff has alleged sufficient facts to give rise to a plausible claim of discrimination under Title VII, and thus, he has also alleged sufficient facts to give rise to an equal protection claim.

Defendants suggest throughout their response brief that Plaintiff cannot maintain a claim of race discrimination because he is "considered the same race as Bontrager, Swanson, Schulz, Mason and everyone else about whom he complains—white or Caucasian."[33] Defendants acknowledge that Title VII does not define race. Their argument hinges on a single citation to the EEOC Compliance Manual.[34] Defendant represents this authority as follows: "EEOC refers to the Office of Management and Budget five racial categories: American Indian or Alaska Native; Asian; Black or African American; Native Hawaiian or Other Pacific Islander; and White."[35] Based on this authority, Defendant baldly proclaims that Plaintiff and his supervisor Defendant Bontrager are of the same race—Caucasian, and thus, Plaintiff could not have been subjected to race discrimination. The EEOC manual actually states as follows:

> *For the collection of federal data on race and ethnicity*, the Office of Management and Budget (OMB) has provided the following five racial categories: American Indian or Alaska Native; Asian; Black or African American; Native Hawaiian or Other Pacific Islander; and White; and one ethnicity category, Hispanic or Latino. OMB has made clear that these categories are "social-political constructs . . . and should not be interpreted as being genetic, biological, or anthropological in nature."[36]

---

[32] *Sorbo*, 432 F.3d at 1173.

[33] Doc. 57 at 10.

[34] EEOC Compliance Manual, at 15-II, available at https://www.eeoc.gov/policy/docs/race-color.html#II (Apr. 4, 2006).

[35] Doc. 57 at 10.

[36] EEOC Compliance Manual, at 15-II (emphasis added) (footnote omitted).

The manual makes clear that these are not the exclusive categories of races contemplated by the statute, but instead, are simply used by the OMB when collecting federal data on race and ethnicity. The manual goes on to explain that "Title VII's prohibition of race discrimination generally encompasses," ancestry, physical characteristics, race-linked illness, culture, perception, association, subgroup or "race plus," and reverse race discrimination.[37] For example, the manual counsels that "[d]iscrimination against a person because of his or her ancestry can violate Title VII's prohibition against race discrimination," and race discrimination can be "based on a person's physical characteristics associated with race, such as a person's color, hair, facial features, height and weight," or "because of cultural characteristics often linked to race or ethnicity, such as a person's name, cultural dress and grooming practices, or accent or manner of speech."[38] In sum, this authority does not support Defendant's assertion that Plaintiff, who is alleged to be an Iranian-born-and-raised United States citizen who speaks with a Persian accent, is not a member of a protected class for purposes of asserting a race discrimination claim. In fact, the cited authority stands for the opposite proposition.

Finally, Defendants argue that the equal protection claim against Bontrager would be dismissed on the basis of qualified immunity. The Court disagrees. The Court incorporates by reference its lengthy recitation in the January 24 Order of the standards that apply when deciding qualified immunity at the motion to dismiss stage of the proceedings.[39] Plaintiff must first allege sufficient facts to demonstrate a constitutional violation.[40] The Court has already determined that Plaintiff has alleged sufficient facts to demonstrate a discrimination claim under Title VII.

---

[37]*Id.* (footnotes omitted).

[38]*Id.* (footnotes omitted).

[39]Doc. 55 at 22–23.

[40]*See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Likewise, he has alleged sufficient facts to demonstrate a race discrimination claim. He alleges that KSU decided not to reappoint him to the position he had held for years, that the abrupt and unexpected decision was not based on poor performance, and that Plaintiff's race or national origin motivated the nonreappointment decision. Moreover, Plaintiff can demonstrate that such a constitutional violation is clearly established.[41]

### C. Bad Faith

Defendants argue that Plaintiff seeks to amend in bad faith, citing his previous inclusion of claims that were dismissed, a footnote in the proposed pleading in which Plaintiff indicates he might seek leave to amend to reassert claims against dismissed Defendants if discovery supports such claims, a state court action against Defendant Bontrager and the other previously-dismissed individual Defendants, and Plaintiff's failure to accept the Court's prior rulings. Defendants assert that "Plaintiff is simply out to get Ms. Bontrager (and the other individual defendants) personally."[42] Asserting claims and lawsuits against an employer after an adverse employment action, in and of itself, is not evidence of bad faith—a weighty accusation. The Court has already cautioned Plaintiff that the only remaining claims in this case are for discrimination on the basis of race and national origin, and retaliation under Title VII and § 1983. Once the Third Amended Complaint is filed, this case will finally proceed through pretrial case management. A deadline for amending the pleadings will likely be set by Judge Gale, who will be aware of the many amended pleadings already allowed. The Court is confident that Judge Gale will fairly manage this case through pretrial and discovery. Defendants have not demonstrated bad faith.

---

[41]*See, e.g.*, *Poolaw v. City of Anadarko, Okla.*, 660 F.2d 459, 462 (10th Cir. 1981); *Fulcher v. City of Wichita*, 445 F. Supp. 2d 1271, 1281 (D. Kan. 2006).

[42]Doc. 57 at 23.

V.     **Defendants' Request to Strike Specific Paragraphs in the Proposed Third Amended Complaint and Request for Costs**

Defendants include an extensive list of paragraphs included in Plaintiff's proposed Third Amended Complaint that they argue include previously dismissed claims and theories and exceed the scope of this Court's January 24 Order. They argue this list is not exhaustive. The Court is not inclined to conduct a paragraph-by-paragraph analysis of this proposed pleading, particularly in light of the Court's decision to grant Plaintiff leave to clarify that an equal protection claim under § 1983 remains. Instead, the Court will grant Plaintiff an extension of time of up to fourteen days from the filing of this Order to file his Third Amended Complaint in conformity with the Court's January 24, 2017 Order, as clarified by this Order. There will be no further extensions of this deadline. The parties shall meet and confer prior to this deadline to avoid yet another round of litigation over the contents of this operative pleading. Before meeting with Defendants, Plaintiff is urged to read this Court's January 24 Order carefully, and to eliminate any contents of the proposed pleading that relate solely to dismissed claims. Defendants' motion for costs is denied. There is no basis for an award of costs under the circumstances of this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File an Amended Complaint and Motion to Extend Deadline to File Third Amended Complaint (Doc. 56) is **granted**. Plaintiff is granted an extension of time of up to fourteen days from the filing of this Order to file his Third Amended Complaint in conformity with the Court's January 24, 2017 Order, as clarified by this Order. The parties shall meet and confer prior to this deadline in an attempt to avoid further litigation over the contents of this pleading. There will be no further extensions of the amendment deadline.

**IT IS SO ORDERED.**

Dated: May 24, 2017

                                                  S/ Julie A. Robinson
                                                  JULIE A. ROBINSON
                                                  UNITED STATES DISTRICT JUDGE